# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: The Honorable Timothy M. Reif**

| | |
|---|---|
| **NORCA INDUSTRIA COMPANY, LLC and VINLONG STAINLESS STEEL (VIETNAM) COMPANY, LTD.,**<br><br>       **Plaintiffs,**<br><br>  **and**<br><br>**SONHA SSP VIETNAM SOLE MEMBER COMPANY LIMITED,**<br><br>       **Plaintiff-Intervenor**<br><br>  **v.**<br><br>**UNITED STATES,**<br><br>       **Defendant,**<br><br>  **and**<br><br>**FELKER BROTHERS CORPORATION and PRIMUS PIPE & TUBE, INC.,**<br><br>       **Defendant-Intervenors.** | **Court No. 25-00132** |

## PLAINTIFFS NORCA INDUSTRIAL COMPANY, LLC AND VINLONG STAINLESS STEEL (VIETNAM) COMPANY, LTD.'S <u>JOINT MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD</u>

Plaintiffs Norca Industrial Company, LLC (Norca) and Vinlong Stainless

Steel (Vietnam) Co., Ltd. (Vinlong) (Norca and Vinlong collectively, Plaintiffs)

respectfully move for judgment on the administrative record under United States

Court of International Trade Rule 56.2 (Motion).  Plaintiffs challenge the final

results of the U.S. Department of Commerce in the administrative review of the

antidumping duty order of welded stainless steel pressure pipe from Vietnam,

*Welded Stainless Steel Pressure Pipe From the Socialist Republic of Vietnam: Final*

*Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg.

22,060 (May 23, 2025), as being unsupported by substantial evidence on the record

and otherwise not in accordance with law as detailed in the accompanying

memorandum of law.

　　　　WHEREFORE, Plaintiffs request that the Court enter an Order holding

Commerce's final results unsupported by substantial evidence on the record and

otherwise not in accordance with law, and enter judgment in favor of Plaintiffs.

Dated: December 23, 2025

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　SQUIRE PATTON BOGGS (US) LLP

　　　　　　　　　　　　　　　　*/s/ Jeremy W. Dutra*
　　　　　　　　　　　　　　　　Jeremy W. Dutra
　　　　　　　　　　　　　　　　jeremy.dutra@squirepb.cim
　　　　　　　　　　　　　　　　2550 M Street, NW
　　　　　　　　　　　　　　　　Washington, DC 20037
　　　　　　　　　　　　　　　　Tel.: (202) 457-6000

　　　　　　　　　　　　　　　　*Counsel for Plaintiffs Norca Industrial*
　　　　　　　　　　　　　　　　*Company, LLC and Vinlong Stainless*
　　　　　　　　　　　　　　　　*Steel (Vietnam) Co., Ltd.*

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: The Honorable Timothy M. Reif**

| |
|---|
| **NORCA INDUSTRIA COMPANY, LLC and VINLONG STAINLESS STEEL (VIETNAM) COMPANY, LTD.,** |
| **Plaintiffs,** |
| **and** |
| **SONHA SSP VIETNAM SOLE MEMBER COMPANY LIMITED,** |
| **Plaintiff-Intervenor** |
| **v.** |
| **UNITED STATES,** |
| **Defendant,** |
| **and** |
| **FELKER BROTHERS CORPORATION and PRIMUS PIPE & TUBE, INC.,** |
| **Defendant-Intervenors.** |

**PUBLIC VERSION**

**Court No. 25-00132**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS NORCA INDUSTRIAL COMPANY, LLC AND VINLONG STAINLESS STEEL (VIETNAM) COMPANY, LTD.'S JOINT MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

WORD COUNT CERTIFICATE OF COMPLIANCE .................................... v

I.    RULE 56.2 STATEMENT ............................................................... 1

    A.    Administrative Determination Subject to Appeal ................... 1

    B.    Issues Presented ...................................................................... 1

II.    BACKGROUND ............................................................................. 1

III.    STANDARD OF REVIEW ............................................................. 4

IV.    ARGUMENT .................................................................................. 5

    A.    Commerce's selection of Morocco instead of Indonesia as the primary surrogate country is unsupported by the record and otherwise not in accordance with law. ....................................... 5

        1.    Commerce had no basis for finding Morocco a substantial producer of comparable merchandise. ........................... 5

        2.    Commerce's reasons for choosing Morocco over Indonesia do not withstand scrutiny. ........................... 9

    B.    Commerce's application of total adverse facts available to Vinlong is unsupported by substantial evidence and otherwise not in accordance with law ............................................... 14

        1.    Commerce erred in applying total facts available to Vinlong. ..................................................................... 14

        a.    Commerce should have accepted Vinlong's proposed "scrap method" for the steel consumption factor of production. ...................................................... 15

        b.    Commerce erred in disregarding all other information that Vinlong provided during the review. .................. 19

        2.    Substantial evidence does not support Commerce's decision to apply an adverse inference to Vinlong. .................. 22

        3.    Commerce's application of total AFA was unlawful. ............. 24

V.    CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Borden, Inc. v. United States*, 4 F. Supp.2d 1221 (Ct. Int'l Trade 1998)............. 21, 24

*Diamond Sawblades Mfrs.' Coal. v. United States,* 986 F.3d 1351 (Fed. 2021)........ 25

*Ellwood City Forge Co. v. United States*, Case No. 21-7, 2025 WL 1556016 (Ct. Int'l Trade June 2, 2025)............................................................................... 20

*Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 35 C.I.T. 1398 (Oct. 12, 2011) ............................................................................... 24, 25

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) .......................... 4

*Gold E. Paper (Jiangsu) Co. v. United States*, 991 F. Supp. 2d 1357 (Ct. Int'l Trade 2014)............................................................................................................... 9

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335 (Ct. Int'l Trade 2019)....................................................................................................................... 19, 25

*Heze Huayi Chem. Co. v. United States*, 532 F. Supp. 3d 1301, 1314–15 (Ct. Int'l Trade 2021) ............................................................................................................ 6

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) .............. 23

*Huarang Mach. Co. v. United States*, 435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006)............................................................................................................................ 24

*Hyundai Elec. & Energy Sys. v. United States*, No. 2021-2312, 2022 WL 3273811 (Fed. Cir. Aug. 11, 2022) ......................................................................... 25

*Jiaxing Brother Fastener Co. v. United States,* 751 F. Supp. 2d 1345 (Ct. Int'l Trade 2010)................................................................................................................ 14

*Mannesmannrohen-Werke AG v. United States*, 77 F. Supp. 2d 1302 (Ct. Int'l Trade 1999)....................................................................................................... 21, 23

*Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356 (Ct. Int'l Trade 2019) ....... 24

*Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247 (Fed. Cir. 2009) ...... 20

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)............ 14, 20, 22

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)......................... 5

*Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642 (Ct.
  Int'l Trade Feb. 15, 2023)............................................................. 9

*Risen Energy Co. v. United States*, 724 F. Supp. 3d 1356 (Ct. Int'l Trade 2024)...... 19

*Shanghai Foreign Trade Enters. v. United States*, 318 F. Supp. 2d 1339, 1348
  (Ct. Int'l Trade 2004)................................................................. 7

*Steel Auth. of India, Ltd. v. United States*, 149 F. Supp. 2d 921 (Ct. Int'l
  Trade 2001).......................................................................... 24

*Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir.
  2011)................................................................................ 20

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i)........................................................... 4
19 U.S.C. § 1677b(c)(1) ................................................................ 5
19 U.S.C. § 1677b(c)(4) ................................................................ 5
19 U.S.C. § 1677e(a).................................................................. 14
19 U.S.C. § 1677e(b).................................................................. 22
19 U.S.C. § 1677e(d) .............................................................. 20, 21
19 U.S.C. § 1677e(e).................................................................. 21

## Administrative Materials

*Antidumping or Countervailing Duty Order, Finding, or Suspended
  Investigation; Opportunity to Request Administrative Review and Join
  Annual Inquiry Service List*, 87 Fed. Reg. 39,461 (July 3, 2023) ........................... 2

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Issues and
  Decision Memorandum for the Final Results of Antidumping Duty New
  Shipper Reviews; 2011-2012*, 78 Fed. Reg. 39,708 (July 2, 2013), and
  accompanying Decision Memorandum .................................................... 7

*Certain Frozen Warmwater Shrimp from Indonesia: Negative Preliminary
  Countervailing Duty Determination*, 78 Fed. Reg. 33,349 (June 4, 2013), and
  accompanying Preliminary Decision Memorandum .......................................... 12

*Chlorinated Isocyanurates from the People's Republic of China: Final Results of
  Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 10,411
  (Feb. 24, 2020), and accompanying Issues and Decision Memorandum ................. 6

*Notice of Proposed Rulemaking and Request for Public Comments:*
*Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. 7,3085 (February
27, 1996)..................................................................................................... 11

*Welded Stainless Steel Pressure Pipe From the Socialist Republic of Vietnam:*
*Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90
Fed. Reg. 22,060 (May 23, 2025), and accompanying Issues and Decision
Memorandum............................................................................................... 1

*Welded Stainless Pressure Pipe From Malaysia, Thailand, and the Socialist*
*Republic of Vietnam: Antidumping Duty Orders*, 79 Fed. Reg. 42,289 (July
21, 2014)..................................................................................................... 1

**WORD COUNT CERTIFICATE OF COMPLIANCE**

This brief has been prepared utilizing Microsoft Word with 12-point Century Schoolbook font.  In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures.  Specifically, excluding those exempted portions of the brief, as set forth in 2B(1) of the Chambers Procedures, undersigned certifies that this brief contains 6,200 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Dated: December 23, 2025

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra
jeremy.dutra@squirepb.cim
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6000

*Counsel for Plaintiffs Norca Industrial Company, LLC and Vinlong Stainless Steel (Vietnam) Co., Ltd.*

Plaintiffs Norca Industrial Company, LLC (Norca) and Vinlong Stainless Steel (Vietnam) Co., Ltd. (Vinlong) (Norca and Vinlong collectively, Plaintiffs) submit this memorandum of points and authorities in support of its motion for judgment on the agency record.

## I.    RULE 56.2 STATEMENT

### A.    Administrative Determination Subject to Appeal

Plaintiffs seek judicial review of the final results of the U.S. Department of Commerce (Commerce) in its administrative review (Review) of the antidumping duty order on welded stainless steel pressure pipe from Vietnam.  *Welded Stainless Steel Pressure Pipe From the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 22,060 (May 23, 2025) (Final Results) (P.R. 211), and accompanying Issues and Decision Memorandum (Final IDM) (P.R. 206).

### B.    Issues Presented

1.    Whether Commerce erred in selecting Morocco instead of Indonesia as the primary surrogate country such that its determination is unsupported by substantial evidence and is contrary to law.

2.    Whether Commerce erred in using adverse facts available (AFA) against Vinlong such that its determination is unsupported by substantial evidence and is contrary to law.

## II.    BACKGROUND

On May 30, 2014, following an affirmative determination by the U.S. International Trade Commission, Commerce published the antidumping duty (AD) order on welded stainless steel pressure pipe from Vietnam. *Welded Stainless*

*Pressure Pipe From Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 79 Fed. Reg. 42,289 (July 21, 2014) (Order).

On July 3, 2023, Commerce published in the Federal Register a notice of opportunity to request an administrative review of the Order, covering the period of review from July 1, 2022 through June 30, 2023 (POR). *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 39,461 (July 3, 2023).

On July 28, 2023, Domestic producers Bristol Metals LLC, Felker Brothers Corporation, and Primus Pipe & Tube, Inc. (collectively, the Petitioners) submitted a request 3 for Commerce to conduct an administrative review of Sonha International Corporation, Sonha SSP Vietnam Sole Member Co. Limited (Sonha), Mejonson Industrial Vietnam Co., Ltd., and Vinlong.  Petitioner Request for Administrative Review (P.R. 1).  Commerce initiated an administrative review covering the POR on September 11, 2023.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 62,322, 62,328 (Dept. of Commerce Sep. 11, 2023) (P.R. 3).

Vinlong and Sonha each timely filed Separate Rate Applications.  Vinlong SRA (P.R. 18) at 1; Sonha SRA (P.R. 19) at 1.  Commerce subsequently selected Vinlong and Sonha for individual review as mandatory respondents.  Respondent Selection Memo (P.R. 23) at 3.

Commerce issued the initial questionnaire to Vinlong on November 28, 2023.
Vinlong Initial Questionnaire (P.R. 28) at 1. Vinlong timely responded to the initial
questionnaire. Final IDM (P.R. 206) at 2; *see also* Vinlong Section A QR (P.R. 35);
Vinlong Section C QR (P.R. 55); Vinlong Section D QR (P.R. 59). Vinlong also
timely responded to the Sections A, C, and D supplemental questionnaire issued by
Commerce during the review. Final IDM (P.R. 206) at 2; *see also* Vinlong Sections
A and C Supplemental QR (P.R. 89) at 1; Vinlong Section D Supplemental QR (P.R.
93) at 1.

Because Commerce deems Vietnam a non-market economy for antidumping
purposes, Commerce computes normal value by valuing the Vietnam producer's
factors of production in one or more market-economy countries (surrogates) that are
at a level of economic development comparable to Vietnam and are significant
producers of comparable merchandise. Vinlong Initial Questionnaire (P.R. 28) at 1.
To that end, on December 13, 2023, Commerce solicited comments from interested
parties regarding the selection of a surrogate country and surrogate value. Request
for Surrogate Country and Value Comments (P.R. 32). Between January and July
2024, Petitioners, Vinlong, and Sonha submitted surrogate country and surrogate
value comments and information to Commerce. Preliminary Issues and Decision
Memorandum (PDM) (P.R. 175) at 3.

Commerce issued its preliminary results and a decision memorandum (PDM)
on August 6, 2024. Preliminary Results (P.R. 178); PDM (P.R. 175). Commerce
preliminarily selected Morocco instead of Indonesia as the primary surrogate

country.  PDM (P.R. 175) at 16.  Commerce also preliminarily determined to base

Vinlong's dumping margin on facts available because Vinlong was "unable to

provide correct consumption rates for its material inputs" and thus was "not able to

provide an accurate factors of production (FOP) database for Commerce to calculate

an accurate margin."  *Id.* at 5.  Based on the same finding, Commerce also

determined Vinlong failed to act to the best of its ability thereby warranting

application of adverse inferences when determining Vinlong's dumping margin.  *Id.*

at 5-6.  Commerce preliminarily calculated a weighted-average margin of 144.51

percent for Sonha, and, as the highest calculated rate in the record, assigned, as

AFA, the rate to Vinlong.  *Id.* at 7.

Commerce published its final results in the review on May 23, 2025.  Final

Results (P.R. 211).  Rejecting Plaintiffs' arguments, Commerce continued to use

Morocco as the surrogate country.  Final IDM (P.R. 206) at 11.  Commerce also

continued to apply total AFA against Vinlong.  *Id.* at 5.

## III.   STANDARD OF REVIEW

The Court must hold unlawful any aspect of Commerce's final results that is

"unsupported by substantial evidence on the record, or otherwise not in accordance

with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  The substantial evidence standard

requires more than mere assertion of "evidence which in and of itself justified {the

determination}, without taking into account contradictory evidence or evidence from

which conflicting inferences could be drawn."  *Gerald Metals, Inc. v. United States*,

132 F.3d 716, 720 (Fed. Cir. 1997).  Rather, substantial evidence supporting an

agency determination must be based on the whole record, and the Court shall take into account not only the information that supports the agency's decision but also whatever in the "record fairly detracts from the weight." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Commerce's final results in the Review fall short of this Court's review standard in several respects, as addressed below.

## IV.    ARGUMENT

### A.    Commerce's selection of Morocco instead of Indonesia as the primary surrogate country is unsupported by the record and otherwise not in accordance with law.

#### 1.    Commerce had no basis for finding Morocco a substantial producer of comparable merchandise.

When, as here, an antidumping duty proceeding involves a nonmarket economy country, Commerce determines normal value by valuing the factors of production used in producing the subject merchandise; general expenses; profit; and "the cost of containers, coverings, and other expenses" in a surrogate market economy country. 19 U.S.C. § 1677b(c)(1). In selecting these "surrogate values," Commerce must, "to the extent possible," use data from a market economy country that is at "a level of economic development comparable to that of the nonmarket economy country" and is a "significant producer{ } of comparable merchandise." 19 U.S.C. § 1677b(c)(4).

In this review, Commerce identified Indonesia and Morocco as being at the same level of economic development as Vietnam, which no party disputes. Request for Surrogate Country and Value Comments (P.R. 32) at 2; PDM (P.R. 175) at 13-14.

It is uncontroverted that Indonesia is a significant producer of identical merchandise, i.e., welded stainless steel pressure pipe. Vinlong's Second SV Comments (P.R. 76) at 1-2 and Exs. 1-2. Commerce and Petitioners concede that Morocco is not a significant producer of welded stainless steel pressure pipe. Final IDM (P.R. 206) at 10. This fact alone warranted Commerce selecting Indonesia instead of Morocco as the primary surrogate country. Indeed, Commerce's past practice recognizes the importance of production of identical merchandise in selecting the surrogate country:

> {I}f the record contains a producer of identical merchandise, the requirement of comparable merchandise under Section 773(c)(4) of the Act is satisfied. There is no need to look further at countries with only comparable merchandise.

See, e.g., *Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 10,411 (Feb. 24, 2020), and accompanying Issues and Decision Memorandum at Comment 2; *see also Heze Huayi Chem. Co. v. United States*, 532 F. Supp. 3d 1301, 1314–15 (Ct. Int'l Trade 2021) (Government acknowledged Commerce's preference "to select surrogate values based on data showing production of identical merchandise" because it "allows Commerce to avoid adjustments that may introduce error or inaccuracy").

Commerce nevertheless selected Morocco as the surrogate country because it viewed Morocco as being a significant producer of comparable merchandise. PDM (P.R. 175) at 14-15; Final IDM (P.R. 206) at 11. According to Commerce, welded stainless steel pressure pipe is comparable to "low value added steel products" such

as "rebar, wire coils, and flats," of which Commerce found Morocco to be a significant producer.  Final IDM (P.R. 206) at 11.  This finding is absurd.

First, Commerce's finding that welded stainless steel pressure pipe is a "low-value added steel product" comparable to "long products" like "rebar, wire coils, and flats" is contradicted by the record.  In their initial comments on surrogate country selection, Petitioners emphasized the "substantial producer of comparable merchandise" requirement.  According to Petitioners, this requirement "is important because the merchandise under consideration {welded stainless steel pressure pipe} is a specialized product made predominantly in only a handful of countries."  Petitioners' Surrogate Country (SC) Comments (P.R. 56) at 2.

Second, Commerce failed to conduct any genuine analysis for determining whether low-value added carbon steel products produced in Morocco are "comparable merchandise" to welded stainless steel pressure pipe.  Commerce's established practice to determine if a product produced by a company in a potential surrogate country is comparable is to apply a three-part test that examines: (1) physical characteristics, (2) end uses, and (3) production processes."  *Shanghai Foreign Trade Enters. v. United States*, 318 F. Supp. 2d 1339, 1348 (Ct. Int'l Trade 2004); *see also Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Issues and Decision Memorandum for the Final Results of Antidumping Duty New Shipper Reviews; 2011-2012*, 78 Fed. Reg. 39,708 (July 2, 2013), and accompanying Decision Memorandum at cmt. II.  The record is bereft of any such analysis by Commerce.

As an initial matter carbon steel is physically different from stainless steel. The carbon steel products Commerce identifies—rebar, wire, wire rod, coils, flats—and the welded stainless steel pressure pipe are all subject of separate and distinct antidumping and countervailing duty investigations, and are thus different "like products" and different "classes or kinds of merchandise." This indicates that the products are not comparable products when evaluated as to physical characteristics, end uses, and production processes.

While acknowledging "respondents' objection that the alleged peculiarities of their own WSSP production process render their subject merchandise uniquely incomparable to the Moroccan {low-value added steel products," Commerce dismissed such evidence as "inapposite to our longstanding practice." Final IDM (P.R. 206) at 11. But Commerce must base its determinations on substantial evidence. It cannot simply disregard record evidence based on "longstanding practice" in other proceedings. Indeed, this alone violates Commerce's recognition that its "practice {is} to carefully consider the available evidence in light of the particular facts of each industry when undertaking its analysis of valuing the FOPs." PDM (P.R. 175) at 12.

The longstanding practice derives from Commerce's Policy Bulletin, Number 04.1. But reliance on this bulletin to find low-value added <u>steel</u> products comparable to welded <u>stainless steel</u> pressure pipe that Petitioners admit is a "specialized" product is misplaced. Final IDM (P.R. 206) at 11. According to that bulletin, "if circular <u>steel</u> pipe and tube were the subject merchandise, rectangular

steel pipe and tube, hot-rolled steel sheet and plate, steel wire rod, steel wire rope, steel bar, and structurals, all of which are low value-added products of roughly similar form (made by combining iron, energy, and further processing), would constitute comparable merchandise." Import Administration Policy Bulletin, Number: 04.1, Non-Market Economy Surrogate Country Selection Process, at 3 (emphasis added). In other words, even if low-value steel long or flat products are comparable merchandise to steel pipe and tube, it does not automatically mean such products are comparable merchandise to stainless steel pipe. Lacking any analysis, Commerce's finding is mere *ipse dixit*, which is insufficient to support its determination. *E.g.*, *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *8 (Ct. Int'l Trade Feb. 15, 2023) ("Commerce's *ipse dixit* here is not enough"); *Gold E. Paper (Jiangsu) Co. v. United States*, 991 F. Supp. 2d 1357, 1365 (Ct. Int'l Trade 2014) ("*Ipse dixit* declarations are not substantial evidence").

Having failed to conduct any analysis or to ground its "comparable merchandise" finding in record evidence, Commerce's determination that Morocco is a substantial producer of comparable merchandise is unsupported by substantial evidence, and thus unlawful.

## 2. Commerce's reasons for choosing Morocco over Indonesia do not withstand scrutiny.

In selecting Morocco over Indonesia as the primary surrogate country, Commerce relied primarily on the contention that "the 10-digit HS categories provided to the record of this proceeding by the petitioner are more detailed than

the eight-digit HS categories provided by the respondent." Final IDM (P.R. 206) at 12. Commerce's determination is unsupported by substantial evidence.

Morocco HTS categories are not more specific than Indonesia in any significant respect. Indeed, Commerce fails to address the fact that the stainless steel materials of Indonesia offered by Vinlong and Sonha are actually more specifically and accurately categorized as to their descriptive wording even in the 8-digit HTS codes. *Compare* Vinlong 30-Day Surrogate Value Comments (P.R. 112) at Exhibits SV-1 and SV-2 *with* Petitioner's Additional SV Information (P.R. 140) at Exhibit 2. For example, the HTS codes for stainless steel coils from Morocco and Indonesia both provide descriptions of hot/cold-rolled coils, stainless steel type, and coils' thickness—i.e., for Morocco, the HTS codes are 7219120000, 7219130000, 7219140000, 7219330000, 7220209000, 722012900; for Indonesia, the HTS codes are 72191200, 72191300, 72191400, 72193300, 72202090, 72201290. *See* Respondents' Joint Case Brief (P.R. 187) at Ex. 1. Compared to Morocco HTS material input, Indonesia stainless steel coils HTS codes—at the 8-digit level—give more precise word descriptions of stainless steel coils used, which is not further worked than cold-rolled / hot-rolled. This is significant because if the steel coils undergo further processing beyond cold-rolling, they do not correspond to the types used to produce subject pipe. Vinlong Section A QR (P.R. 35) at A-20. Commerce failed to address this in its determination. Final IDM (P.R. 206) at 12-13.

For packing factors, the Indonesian 8-digit HTS codes closely matched the description of the type of packaging material utilized and are no less specific than

the Moroccan 10-digit HS codes.   of Morocco is not more specific than 8-digit HS code of Indonesia. Respondents' Joint Case Brief (P.R. 187) at Ex. 1.  Likewise, for scrap and all sub-materials—i.e., ammonia, argon, acid, hydrogen, nitrogen—the Morocco HTS codes and Indonesia HTS codes are the same.  *Id.*

Given that the 10-digit classifications for Morocco provide no further details than the Indonesian 8-digit classifications, and given that the Indonesian tariff classifications Respondents provided have greater detail that align with the inputs used by Vinlong to make welded stainless steel pressure pipe, Commerce's finding that the Indonesia data is superior is unsupported by substantial evidence.

Commerce's finding that the financial statements for Morocco are superior to those for Indonesia cannot withstand scrutiny.  Commerce aims to obtain surrogates including financials that are as specific as possible to the subject product. *Notice of Proposed Rulemaking and Request for Public Comments: Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. 7,308, 7,345 (February 27, 1996).  The uncontroverted record is that the Indonesian producer SPINDO produces product identical to the subject pipe and thus its financial statement ratios in the record are product-specific as to factory overhead, SG&A and profit.  In sharp contrast, and as discussed, the Morocco producers do not produce product identical to the subject pipe, or even product comparable to the subject pipe, or even pipe.  Thus, any financial ratios derived from them are not product-specific.

Commerce rejected using the financial statement from Indonesian welded stainless steel pressure pipe producer PT Steel Pipe Industry of Indonesia Tbk (SPINDO) because the company "was the beneficiary of an Export Working Capital Loan from Indonesia's Export-Import (EXIM) Bank, which was found to be countervailable in countervailing duty investigation of *Shrimp from Indonesia.*" Final IDM (P.R. 206) at 14. But Commerce relies on a negative countervailing subsidy determination for its dismissal of the SPINDO financial statement. *Certain Frozen Warmwater Shrimp from Indonesia: Negative Preliminary Countervailing Duty Determination*, 78 Fed. Reg. 33,349 (June 4, 2013), and accompanying Preliminary Decision Memorandum at 16. Further, the SPINDO financial statement indicates that the interest rate on the Indonesian EXIM Bank loan (repaid by April 6, 2023) was 9-9.5% whereas the interest rate on other private sector loans to SPINDO were markedly lower at 7.25-7.75%, 8.75%, and 4-7.5%. Vinlong 30-Day Surrogate Value Comments (P.R. 112), Ex. SV-12A at 78, 81-84. Apart from being at above market interest rates, the EXIM Bank loan represented a *de minimis* 0.07% of total SPINDO funding. *Id.* Contrary to Commerce's conclusion, there is no substantial evidence supporting a finding that SPINDO <u>benefited</u> from any countervailable subsidy.

By stark contrast, the Moroccan financial statements on which Commerce relies—Maghreb and Sonasid—suffer from major defects. First, the 2022 Maghreb financial report includes an auditor letter describing the company's heavy indebtedness that "presents a going concern risk for the company as of December

31, 2022." Petitioners' Additional SV Information, Ex. 27 (P.R. 135 – P.R. 137) at 7.
Second, Maghreb's balance sheet also shows a substantial debt to the Moroccan
government of 82% of the company's equity, which the audited financial report
concedes represents "investment subsidies," "equilibrium subsidies," "granted
subsidies," "receivables from the government," a "state subordinated loan, state
debts," and "debt forgiveness." *Id.* at 15, 67, 83-84, 88. Remarkably, the financial
statements contain no auditor notes (or such notes were omitted). Third, the
Maghreb financial report admits the need for extension of safeguard measures,
which are imposed under WTO rules on fairly traded imports deemed to be a
substantial cause of serious injury to domestic producers. *Id.* at 80. Maghreb's
financial statement effectively concedes the inability of the company to compete
against fairly traded imports.

Sonasid's financial statement suffers from similar issues, showing that the
company has "receivables from the state," substantial "liabilities to the state,"
"receivables and debts to the government," and a significant "state creditor," with
15% of receivables form the government (as opposed to customers) and 24% of debt
is to a "state creditor." Petitioners' Additional SV Information, Ex. 28 (P.R. 138) at
4, 5, 21, 65, 71.

In sum, the record evidence establishes reason to believe or suspect that the
Moroccan producers received countervailable subsidy benefits. Even Commerce
acknowledged the issues Respondents outlined represent "a demerit against the
Moroccan financial statements." Final IDM (P.R. 206) at 16. Commerce does not

dispute that the issues give rise to a reasonable suspicion; rather, it dismisses any issues with the Moroccan financial statements because there is no evidence of Commerce having previously countervailed the subsidies the Moroccan producers received. But the longstanding policy is to reject financial statements where Commerce has reason to believe or suspect the receipt of countervailable subsidy benefits—a formal finding is not required. *Jiaxing Brother Fastener Co. v. United States,* 751 F. Supp. 2d 1345, 1352 (Ct. Int'l Trade 2010).

Ultimately, Commerce's decision to reject Indonesia in favor of Morocco as the surrogate country is unsupported by substantial evidence and not in accordance with law.

**B.    Commerce's application of total adverse facts available to Vinlong is unsupported by substantial evidence and otherwise not in accordance with law.**

**1.    Commerce erred in applying total facts available to Vinlong.**

Congress permits Commerce to use facts otherwise available in reaching its determination only in certain circumstances. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003). Resorting to facts available is permissible only if necessary information is not available on the record, or an interested party: (a) withholds information, (b) fails to provide information by the submission deadline or in the form and manner requested, (c) significantly impedes the proceeding, or (d) provides information that cannot be verified. 19 U.S.C. § 1677e(a). None of the above conditions apply to Vinlong.

14

Vinlong never withheld any requested information from Commerce during the review; rather, it provided all information maintained in its records in response to Commerce's questions. Vinlong also timely responded to all Commerce questionnaires and provided verifiable information required to make a proper and accurate dumping margin calculation.

### a. Commerce should have accepted Vinlong's proposed "scrap method" for the steel consumption factor of production.

The sole issue on which Commerce bases its decision to use facts available relates to a single factor of production (FOP): conversion of steel material into welded stainless steel pressure pipe. Final IDM (P.R. 206) at 4-5. Commerce, however, misconstrues Vinlong's questionnaire responses and improperly rejected verifiable information Vinlong supplied for this FOP.

Vinlong reported to Commerce "the per-unit factor amount of steel material based on the input of material into production" that Vinlong records in its accounting system. Vinlong Section D QR (P.R. 59; C.R. 80) at D-3. The issue, Vinlong explained, is that its accounting system "only tracks [          ] of steel material and [          ] of the finished products," but that the steel materials issued to produce finished product "can also be in the form of [

      ] at the end of the period." *Id.* at D-3 to D-4. Because the company's "normal operational activities" do not require it "[

              ]," its accounting system only shows [          ] of work in progress and does not show its [                  ]. *Id.* at D-4.

Given the challenge in trying to calculate the [                                    ] for purposes of the review, Vinlong instead reported the per-unit factor for merchandise under consideration (MUC), i.e., welded stainless steel pressure pipe, by allocating the quantity of material consumed by each steel grade to the production quantity of the corresponding steel grade such that the "[

                    ] applies to finished products of the [                    ], regardless of whether they are MUC or non-MUC products." *Id.* This unfortunately resulted in a steel material consumption rate of [

        ]." *Id.* at D-4 and Ex. D-3A; *see also* Vinlong Section D QR (P.R. 59; C.R. 81) at Exs. D-10A, D-10B, and D-10H; Vinlong Section D QR (P.R. 59; C.R. 82) at Ex. D-10H (cont.).

Instead of waiting for Commerce to seek further information, Vinlong was transparent, explaining to Commerce in its initial questionnaire response that the calculated rate "[                         ]" and explained that it resulted from "[

        ]." Vinlong Section D QR (P.R. 59; C.R. 80) at D-4. According to the company, there "may have been [

                    ]," which resulted in a "[                    ] between actual production and accounting recognition." *Id.* In the normal course, this is not an issue because Vinlong's accountant "only conducts inventory counts at the end of the fiscal year." *Id.*; *see also* Vinlong Section D Supplemental QR (P.R. 93; C.R. 104)

at SD-page 4.  Indeed, Vinlong noted that it undergoes audits and inspections for each fiscal year, including by Government authorities, and the audits "did not find any significant misstatement or error" and the accounting method did not raise any concerns over the past ten years.  Vinlong Section D QR (P.R. 59; C.R. 80) at D-4 to D-5; Vinlong Section D Supplemental QR (P.R. 93; C.R. 104) at 3-4.  In short, Vinlong explained that the apparent discrepancy in the calculated consumption rate was the result of the review spanning a period that does not align with the company's fiscal year.  Vinlong Section D QR (P.R. 59; C.R. 80) at D-4; Vinlong Section D Supplemental QR (P.R. 93; C.R. 104) at 4.

Determined to be forthcoming, Vinlong provided an alternative to Commerce to report a higher FOP for steel material than provided by the accounting records. Vinlong Section D QR (P.R. 59; C.R. 80) at D-5.  This "scrap method" provided an "upward adjustment multiplier calculated by dividing the total production output quantity and an allocated quantity of corresponding scrap during the POR over the total quantity of MUC output during the POR."  *Id.* at D-5 and Ex. D-3B; *see also* Vinlong Section D Supplemental QR (P.R. 93; C.R. 104, 105) at 2 and Exhibit SD-5B. Vinlong further provided Commerce with a reconciliation for this method (along with the reconciliation from the account ledger).  Vinlong Section D QR (P.R. 59; C.R. 81) at Exs. 10-A and 10-B.

Commerce rejected the scrap method "because it is dependent on a narrow subset of Vinlong's production data and is based on Vinlong's own inaccurate books

17

and records." Final IDM (P.R. 206) at 4-5. This determination is unsupported by the record.

First, as noted, the low per unit consumption Vinlong calculated was a result of timing issues from when production records were collected and recorded into the system and a difference between the POR and the company's fiscal year. Vinlong explained—and there is no record evidence to the contrary, that government audits conducted on an annual basis did not reveal any issues with Vinlong's records.

Second, the scrap method involved use of scrap sales—i.e., the scrap resulting from the production of MUC and non-MUC. Vinlong Section D QR (P.R. 59; C.R. 80) at D-5; Vinlong Section D Supplemental QR (P.R. 93; C.R. 104) at 8. Contrary to Commerce's conclusory dismissal, Vinlong explained that all scrap sales used as to the adjustment are supported by documents (i.e., sales transactions, invoices, and payments) and is reflected in Vinlong's accounting system. Vinlong Section D QR (P.R. 59; C.R. 80) at D-5. Indeed, Vinlong provided its Scrap Detail Report as part of the sales ledger for the reconciliation worksheet in the initial questionnaire response to Section C, which includes the Invoice Number and Customs Declaration Number for each sale of scrap. Vinlong Section C QR (P.R. 55; C.R. 42) at C-42 and Ex. C.4 (Sales Reconciliation tab and Sales Report of Scrap – POR tab). The corresponding invoices and customs declarations from the Vietnamese Customs Authority were available for verification. Vinlong Section D QR (P.R. 59; C.R. 80) at D-5.

18

Commerce simply chose to neither seek further information nor attempt to verify the records. Although verification is discretionary, Commerce cannot treat information as "unverifiable without at least attempting to verify" the information. *Risen Energy Co. v. United States*, 724 F. Supp. 3d 1356, 1364-65 (Ct. Int'l Trade 2024); *see also Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335, 1343 (Ct. Int'l Trade 2019) ("Commerce may not simply declare that the evidence cannot be verified and therefore, a gap exists. That is not how it works. Commerce must attempt verification *in order to conclude* that a gap exists related to that inquiry.").

Third, Vinlong also provided Commerce with a complete reconciliation for its steel consumption. Vinlong Section D QR (P.R. 59; C.R. 81) at Exs. D-10A, D-10B, and D-10H; Vinlong Section D QR (P.R. 59; C.R. 82) at Ex. D-10H (cont.). Commerce sought no further information or clarification.

Commerce's cursory rejection of the scrap method is unsupported by the record, let alone by the requisite substantial evidence.

> **b.  Commerce erred in disregarding all other information that Vinlong provided during the review.**

Even if Commerce was justified in rejecting Vinlong's steel conversion FOP, the agency should have accepted all other data Vinlong produced for U.S. sales data and for other FOPs, including HYDRO_GAS, ARGON_GAS, NITRO_GAS, SCRAP, DIRLAB, INDIRLAB, ELEC, and WATER. These FOPs are reliable, can be verified from Vinlong records (e.g., purchase records), and their reliability has not been

questioned.  It is unreasonable to reject all Vinlong's other submitted FOP and U.S. sales databases for which Commerce identified no issues.

Reliance on facts otherwise available is only appropriate to "fill gaps" in the record necessary for Commerce to complete its dumping margin calculation. *See Nippon Steel*, 337 F.3d at 1381 (stating that the use of facts otherwise available is to "fill in the gaps" when "Commerce has received less than the full and complete facts needed to make a determination"); *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1255 (Fed. Cir. 2009) ("The legislative history of the URAA thus reveals that Congress intended § 1677e(a) to provide Commerce with gap-filling power to facilitate its implementation of the antidumping laws"); *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) ("Commerce can only use facts otherwise available to fill a gap in the record"). Indeed, "Commerce does not have a blank check to disregard all of a party's information just because it finds a gap in the record." *Ellwood City Forge Co. v. United States*, Case No. 21-7, 2025 WL 1556016, at *6 (Ct. Int'l Trade June 2, 2025).

Any deficiency was limited to a discrete category of information: the steel conversion FOP, as to which Vinlong provided a solution.  As for the remaining FOPs and U.S. sales, Commerce failed to identify any gap in the record as to these issue that warranted resort to total facts available and justified disregarding all information Vinlong submitted.

Furthermore, use of facts available under section 1677e(a) is subject to notice requirements.  Specifically, Commerce cannot disregard information a respondent

provides and use facts available unless it first provides the respondent "with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677e(d).  While Commerce issued a supplemental questionnaire to Vinlong, it asked only for Vinlong to "reconcile the [                                     ] used per [                    ] during the POR on a [        ] basis to the [                    ]," and to provide a detailed explanation if it is unable to do so.  Vinlong Supplemental Questionnaire (P.R. 83; C.R. 93) at 7 (Question 13).  Vinlong responded to Commerce's questions.  Vinlong Section D Supplemental QR (P.R. 93; C.R. 104) at 3-4.  Commerce never sought clarification about the "scrap method" Vinlong proposed in its initial questionnaire.  Failure to notify Vinlong of the specific deficiency and an opportunity to address bars Commerce from resorting to facts available.  19 U.S.C. § 1677e(d); *Mannesmannrohen-Werke AG v. United States*, 77 F. Supp. 2d 1302, 1313-14 (Ct. Int'l Trade 1999).

Furthermore, section 1677e(e) prohibits Commerce from "declin{ing} to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by Commerce" if certain conditions are satisfied.  Commerce failed to address the factors Congress required it to consider before disregarding all information and data Vinlong submitted.  *Compare* PDM (P.R. 175) at 5-6 and Final IDM (P.R. 206) at 4-5 *with* 19 U.S.C. § 1677e(e).  This was legal error.  *Borden, Inc. v. United States*, 4 F. Supp.2d 1221, 1245 (Ct. Int'l Trade 1998) ("Subsection (e) may require use of the

respondent's information notwithstanding that a remedy or explanation is unsatisfactory.").

### 2.    Substantial evidence does not support Commerce's decision to apply an adverse inference to Vinlong.

Having rejected the "scrap method" as inadequate," and finding Vinlong unable "to report a reliable verifiable alternative reporting method {for} its FOP database that can be accurately traced back to its books and record, Commerce determined that application of AFA was appropriate because Vinlong failed "to act to the best of its ability." Final IDM (P.R. 206) at 5. Because facts available are not warranted, adverse facts available may not be imposed. *Zhejiang Dunan*, 652 F.3d at 1345-46.

Even if the record supports Commerce's resort to facts available (it does not), Commerce's finding that Vinlong failed to cooperate to the best of its ability is unsupported by substantial evidence.

To apply an adverse inference, Commerce must find that the respondent "failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority." 19 U.S.C. § 1677e(b). Simply not providing information does not itself show that did not act to best of ability. *Nippon Steel*, 337 F. 3d at 1383. Before resorting to AFA, Commerce must "examine a respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information." *Id.* at 1382.

As Commerce acknowledges, Vinlong timely responded to the initial questionnaire and the supplemental questionnaires Commerce issued during the

review. PDM (P.R. 175) at 2. Further, it was Vinlong that brought to Commerce's attention a perceived issue with the calculated steel conversion FOP. Vinlong Section D QR (P.R. 59; C.R. 80) at D-4. And Vinlong only used this calculation method to be fully responsive because in the ordinary course of business its accounting system tracks only the quantities of steel material used and finished merchandise produced, not the quantity of work in progress in the ordinary course of business. *Id.* at D-3. Vinlong attempted to investigate the reason for the conversion rate calculated and reported to Commerce in its initial questionnaire response that it likely occurred because its accountant—who left the company before the review—may have, for a certain period, collected material issue notes a few days before or after than month closing, which resulted in a timing difference between actual production and accounting recognition. *Id.* Vinlong, moreover, offered a methodology to adjust the conversion factor upward, *id.* at D-5, about which Commerce never sought supplemental information and never provided an opportunity to address supposed deficiencies disclosed only in the PDM.

Commerce failed to evaluate Vinlong's conduct in the context of its abilities and efforts, thereby rendering the use of adverse inferences unlawful. *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1386 (Fed. Cir. 2022).

Apart from being unsupported by substantial evidence, Commerce also failed to comply with the statutory requirements before applying adverse inferences. Specifically, to support a finding that a respondent "has failed to cooperate by not acting to the best of its ability," Commerce must do more than "simply assert the

legal standard as a conclusion and repeat its finding concerning the need for facts available." *Mannesmannrohen-Werke*, 77 F. Supp. 2d at 1313-14.  But that is precisely the approach Commerce took here in applying total adverse facts available (AFA) to Vinlong.  Indeed, the basis for its decision to use adverse inferences is virtually identical for its reason for using facts available in the first instance.  Final IDM (P.R. 206) at 5; *see also* PDM (P.R. 175) at 5-6.  This was clear legal error. *Borden*, 4 F. Supp.2d at 1246 (Commerce failed to comply with 19 U.S.C. § 1677e(b) because it "simply repeated its {facts available} finding, using slightly different words . . . ."); *Steel Auth. of India, Ltd. v. United States*, 149 F. Supp. 2d 921, 930 (Ct. Int'l Trade 2001) ("the facts available and adverse facts available findings are distinct, and Commerce may not use its facts available finding as the sole justification for use of an  adverse  inference").

### 3.    Commerce's application of total AFA was unlawful.

By statute, Commerce generally may use "an adverse inference only with respect to the specific information that a respondent failed to provide." *Huarang Mach. Co. v. United States*, 435 F. Supp. 2d 1261, 1273 (Ct. Int'l Trade 2006).  As such, any application of AFA here should have been limited to the steel conversion FOP.  But Commerce did not limit its AFA application to the one FOP for which it had concerns.  It instead rejected essentially all of Vinlong's production and U.S. sales information and based Vinlong's margin on total AFA.  Final IDM (P.R. 206) at 5-6; *see also* PDM (P.R. 175) at 6-7.  This was unlawful.

This court previously observed that use of total adverse facts is limited to situations in which there is the "absence of any usable information." *Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1375 (Ct. Int'l Trade 2019). Indeed, Commerce cannot resort to total facts available if "some of the information could be used, or the deficiency was only 'with respect to a discrete category of information." *Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 35 C.I.T. 1398, 1416 (Oct. 12, 2011); *Hyundai Elec. & Energy Sys. v. United States*, No. 2021-2312, 2022 WL 3273811, at *4 (Fed. Cir. Aug. 11, 2022); *Diamond Sawblades Mfrs.' Coal. v. United States,* 986 F.3d 1351 (Fed. Cir. 2021).

Commerce cannot apply adverse inferences "in disregard of information of record that is not missing or otherwise deficient." *Guizhou Tyre*, 415 F. Supp. 3d at 1343. Commerce should have accepted all Vinlong's questionnaire responses to calculate a dumping margin for Vinlong, with, at most, filling in any gap as to yield loss, i.e., the steel conversion FOP. *Foshan*, 35 CIT at 1416.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court: (1) hold Commerce's surrogate country selection unsupported by substantial evidence and otherwise not in accordance with law; (2 hold Commerce's application to Vinlong of total adverse facts available unsupported by substantial evidence and otherwise not in accordance with law; and (3) remand the final results to Commerce with instructions to correct the errors outlined in this motion for judgment.

Dated: December 23, 2025

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

*/s/ Jeremy W. Dutra*

Jeremy W. Dutra
jeremy.dutra@squirepb.cim
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6000

*Counsel for Plaintiffs Norca Industrial*
*Company, LLC and Vinlong Stainless*
*Steel (Vietnam) Co., Ltd.*