**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |
|---|---|
| NORCA INDUSTRIAL COMPANY, LLC and VINLONG STAINLESS STEEL (VIETNAM) COMPANY, LTD., <br><br>        *Plaintiffs,* <br> and <br><br> SONHA SSP VIETNAM SOLE MEMBER COMPANY LIMITED, <br><br>        *Plaintiff-Intervenor* <br><br>        *v.* <br><br> UNITED STATES, <br><br>        *Defendant,* <br> and <br><br> FELKER BROTHERS CORPORATION and PRIMUS PIPE & TUBE, INC., <br><br>        *Defendant-Intervenors.* | Court No. 25-00132 |

<u>**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Roger B. Schagrin
Christopher T. Cloutier
Amanda G. Swenson
Alessandra A. Palazzolo
SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Felker Brothers Corporation and Primus Pipe & Tube, Inc.*

Dated: May 4, 2026

**Table of Contents**

STATEMENT PURSUANT TO RULE 52.6(c)(1) ........................................................................ 2

   I.   Administrative Determination Under Review ..................................................... 2

   II.   Issues Presented for Review ........................................................................... 2

STATEMENT OF FACTS ........................................................................................................ 3

SUMMARY OF ARGUMENT .................................................................................................. 3

ARGUMENT ............................................................................................................................ 3

   I.   Standard of Review ..................................................................................... 3

   II.   Commerce's Selection of Morocco as the Primary Surrogate Country is Supported by Substantial Evidence and in Accordance with Law ........................................................ 4

      A.   The Legal Standard Supports Deference to Commerce's Choice of Surrogate Country .. 4

      B.   Record Evidence Demonstrates that Morocco is a Significant Producer of Comparable Merchandise ............................................................................................. 5

      C.   Substantial Evidence Supports Commerce's Selection of the Surrogate Country with the Best Available Surrogate Information ............................................................... 7

   III.   Commerce's Application of Total Adverse Facts Available to Vinlong is Supported by Substantial Evidence and in Accordance with Law ........................................................ 10

      A.   Commerce Was Statutorily Compelled to Use Facts Available ..................................... 10

      B.   Commerce Operated Within its Statutory Discretion in Applying an Adverse Inference to Vinlong After Repeated Attempts to Obtain Usable Data to No Avail ...................... 13

CONCLUSION ........................................................................................................................ 16

## Table of Authorities

**Cases**

*ABB Inc. v. United States*,
355 F. Supp. 3d 1206 (Ct. Int'l Trade 2018) ............................................................ 10

*BMW of N. America LLC v. United States*,
926 F.3d 1291, 1295 (Fed. Cir. 2019)...................................................................... 12

*Coalition for the Preservation of Am. Brake Drum and Rotor Aftermarket Mfr. v. United States*,
44 F. Supp. 2d 229 (Ct. Int'l Trade 1999) .................................................................. 4

*Dorbest Ltd. v. U.S.*,
462 F. Supp. 2d 1262 (Ct. Int'l Trade 2006) ............................................................... 6

*Downhole Pipe & Equipment, L.P. v. United States*,
776 F.3d 1369, 1379 (Fed. Cir. 2015)................................................................. 4, 7, 8

*Essar Steel Ltd. v. United States*,
678 F.3d 1268, 1276 (Fed. Cir. 2012)...................................................................... 13

*Goldlink Indus. Co. v. United States*,
431 F.Supp.2d 1323 (Ct. Int'l Trade 2006) ................................................................. 4

*Hitachi Energy USA Inc. v. United States*,
34 F.4th 1375 (Fed. Cir. 2022) ............................................................................... 15

*Home Meridian Int'l, Inc. v. United States*,
772 F.3d 1289 (Fed. Cir. 2014)............................................................................ 5, 10

*Mittal Steel Galati S.A. v. United States*,
502 F. Supp. 2d 1295 (Ct. Int'l Trade 2007) .......................................................... 5, 10

*Nan Ya Plastics Corp. v. United States*,
810 F.3d 1333 (Fed. Cir. 2016)............................................................................ 11, 12

*Nippon Steel Corp. v. United States*,
337 F.3d 1373 (Fed. Cir. 2003)............................................................................... 13

*QVD Food Corp. v. United States*,
658 F.3d 1318 (Fed. Cir. 2011)............................................................................... 11

*Weishan Hongda Aquatic Food Co., Ltd. v. United States*,
917 F.3d 1353 (Fed. Cir. 2019)................................................................................. 9

*Zhejiang DunAn Hetian Metal Co. v. United States*,
652 F.3d 1333 (Fed. Cir. 2011).................................................................................. 4

**Statutes**

19 U.S.C. § 1677b(c)(1)............................................................................................ 4
19 U.S.C. § 1677b(c)(4)......................................................................................... 6, 8
19 U.S.C. § 1677e(a)(1) and (a)(2)(A)–(D)............................................................... 11
19 U.S.C. § 1677e(b)(1)....................................................................................... 13, 15

**Other Authorities**

*Aluminum Extrusions from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 80,506 (Dep't Commerce Oct. 3, 2024)............ 10

Policy Bulletin 04.1: Non-Market Economy Surrogate Country Selection Process (Dep't Commerce March 1, 2004) ........................................................................................................ 6

*Statement of Administrative Action (SAA)*, H.R. Doc. No. 103-316, 103d Cong., 2d Session, vol. 1 (1994)................................................................................................................... 11, 13

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |
|---|---|
| NORCA INDUSTRIAL COMPANY, LLC and VINLONG STAINLESS STEEL (VIETNAM) COMPANY, LTD., <br><br> *Plaintiffs,* <br> and <br><br> SONHA SSP VIETNAM SOLE MEMBER COMPANY LIMITED, <br><br> *Plaintiff-Intervenor* <br><br> *v.* <br><br> UNITED STATES, <br><br> *Defendant,* <br> and <br><br> FELKER BROTHERS CORPORATION and PRIMUS PIPE & TUBE, INC., <br><br> *Defendant-Intervenors.* | Court No. 25-00132 |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of this Court, Defendant-Intervenors Felker Brothers Corporation

("Felker Brothers") and Primus Pipe & Tube, Inc. ("Primus") (collectively, "Defendant-

Intervenors" or "Domestic Interested Parties") hereby submit their response to the motion for

judgment on the agency record filed by Plaintiffs Norca Industrial Company, LLC ("Norca") and

Vinlong Stainless Steel (Vietnam) Co., Ltd. ("Vinlong") (collectively, "Plaintiffs"). *Plaintiffs*

*Norca Industrial Company, LLC and Vinlong Stainless Steel (Vietnam) Company, Ltd.'s Joint*

1

*Motion for Judgment on the Administrative Record* (Dec. 23, 2025) (ECF No. 29 and 30) ("*Pls.' Br.*"); *see also Plaintiff-Intervenor Sonha SSP Vietnam Sole Member Company Limited's Notice of Partial Joinder in Plaintiffs' Joint Motion for Judgment on the Administrative Record* (Dec. 30, 2025) (ECF No. 31). For the reasons explained below, this Court should sustain the final results from the U.S. Department of Commerce ("Commerce") in the 2022-23 administrative review of *Welded Stainless Steel Pressure Pipe from Vietnam*, including Commerce's selection of Morocco as the primary surrogate country and Commerce's application of total adverse facts available for Vinlong's final margin.

<u>**STATEMENT PURSUANT TO RULE 52.6(c)(1)**</u>

**I.    Administrative Determination Under Review**

The administrative determination under review is the final results of the U.S. Department of Commerce ("Commerce") in the 2022-23 administrative review of the antidumping duty order on welded stainless steel pressure pipe ("WSSP") from Vietnam. *See Welded Stainless Steel Pressure Pipe from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 22,060 (Dep't Commerce May 23, 2025) ("Final Results"), P.R. 211 and accompanying Issues and Decision Memorandum ("IDM"), P.R. 206.

**II.    Issues Presented for Review**

1. Whether Commerce's selection of Morocco as the primary surrogate country is supported by substantial evidence and otherwise in accordance with law.

2. Whether Commerce's use of adverse facts available ("AFA") in determining Vinlong's final dumping margin is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

Defendant-Intervenors agree with the statement of the facts as presented in the response brief of the Defendant United States and incorporate them by reference. *See Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Administrative Record* (April 22, 2026) (ECF Nos. 34 and 35) ("*Def.'s Br.*") at 3-10.

## SUMMARY OF ARGUMENT

Defendant-Intervenors agree with the summary of argument as presented in Defendant's response brief (ECF Nos. 34 and 35 at 11-12) and incorporate it by reference. In addition, Defendant-Intervenors provide additional legal and factual support for Commerce's selection of Morocco as the primary surrogate country and application of facts available with an adverse inference ("AFA") to Vinlong. First, Commerce has broad discretion to select the "best available information" for surrogate values in nonmarket economy proceedings and, in this case, reasonably explained why the Moroccan import data and financial statements were the best record available information. Second, Commerce was statutorily obliged to use facts available for Vinlong due to the lack of record information on that company's factors of production, and properly exercised its discretion to apply AFA as the lack of information was due to Vinlong's failure to cooperate to the best of its ability.

## ARGUMENT

### I.    Standard of Review

Defendant-Intervenors agree with the standard of review as presented in Defendant's response brief (ECF Nos. 34 and 35 at 12-13) and incorporate it by reference.

3

II.    **Commerce's Selection of Morocco as the Primary Surrogate Country is Supported by Substantial Evidence and in Accordance with Law**

A.  **The Legal Standard Supports Deference to Commerce's Choice of Surrogate Country**

The statute directs Commerce to calculate normal value for non-market economy ("NME") merchandise using "the best available information regarding the values of {factors of production used} in a market economy country." 19 U.S.C. § 1677b(c)(1). "Since the statute does not specify what constitutes best available information, these decisions are within Commerce's discretion." *Coalition for the Preservation of Am. Brake Drum and Rotor Aftermarket Mfr. v. United States*, 44 F. Supp. 2d 229, 258 (Ct. Int'l Trade 1999); *see also Nation Ford Chemical Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999) (explaining that 19 U.S.C. § 1677b(c)(1) affords Commerce "wide discretion" in how to value those factors of production).

The Federal Circuit has held that "Commerce need not prove that its methodology was the only way or even the best way to calculate surrogate values for factors of production as long as it was a reasonable way." *Coalition for the Preservation of Am. Brake Drum and Rotor Aftermarket Mfr.*, 44 F. Supp. 2d at 258. The Federal Circuit has articulated that a court's "duty is 'not to evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information.'" *Downhole Pipe & Equipment, L.P. v. United States*, 776 F.3d 1369, 1379 (Fed. Cir. 2015) (citing *Zhejiang DunAn Hetian Metal Co. v. United States,* 652 F.3d 1333, 1341 (Fed. Cir. 2011) and *Goldlink Indus. Co. v. United States,* 431 F.Supp.2d 1323, 1327 (Ct. Int'l Trade 2006) (internal quotation marks removed)).

Indeed, "the data on which Commerce relies to value inputs must be the 'best available information,' but there is no requirement that the data be perfect." *Home Meridian Int'l, Inc. v.*

4

*United States*, 772 F.3d 1289, 1296 (Fed. Cir. 2014). "The 'best available information' concerning the valuation of a particular factor of production may constitute information from the surrogate country that is directly analogous to the production experience of the NME producer … or it may not." *Nation Ford Chem. Co.*, 166 F.3d at 1377. "Where Commerce is confronted with two alternatives (both of which have their good and bad qualities), and Commerce has a preferred alternative, the court will not second-guess Commerce's choice." *Mittal Steel Galati S.A. v. United States*, 502 F. Supp. 2d 1295, 1313 (Ct. Int'l Trade 2007).

In summary, Commerce has wide discretion to select the best information available from the record as surrogate values for NME factors of production, as long as its selection is reasonable. Surrogate value information does not need to be "perfect," or "directly analogous" to an NME respondent's production experience, and the existence of an alternate source of surrogate value information does not in itself undermine Commerce's determination that certain information was the best information on the record. Here, for the reasons described below, Commerce reasonably determined that the Moroccan surrogate value information was the best information on the record, and the Court should therefore uphold this determination.

**B. Record Evidence Demonstrates that Morocco is a Significant Producer of Comparable Merchandise**

Plaintiffs' attempts to argue that Commerce's selection of Morocco as the primary surrogate country was unsupported by the record or contrary to law are without merit.

First, Plaintiffs argue that, because Indonesia is a significant producer of *identical* merchandise, while Morocco is not a significant producer of *identical* merchandise, "{t}his fact alone warranted Commerce selecting Indonesia instead of Morocco as the primary surrogate country." *Pl.'s Br.* at 6. This is plainly incorrect. The language in the statute directs Commerce to rely on surrogate value information from one or more countries that are "significant producers of

5

*comparable* merchandise." 19 U.S.C. § 1677b(c)(4) (emphasis added). As Commerce cited in its IDM, Policy Bulletin 04.1 states that "{i}f more than one country has {been found to be economically comparable and significant producer of comparable merchandise}, the country with the best factors data is selected as the primary surrogate country." *IDM*, P.R. 206 at 12 (citing Policy Bulletin 04.1: Non-Market Economy Surrogate Country Selection Process (Dep't Commerce March 1, 2004) ("Policy Bulletin 04.1")). As this Court has held, in circumstances where one potential surrogate country is a producer of identical merchandise and another potential surrogate country is a producer of comparable merchandise, "{g}iven that Commerce chooses the surrogate country and identifies comparable merchandise on a case-by-case basis, it is reasonable for Commerce to decline to make the producer of identical merchandise the automatic choice." *Dorbest Ltd. v. U.S.*, 462 F. Supp. 2d 1262, 1271 (Ct. Int'l Trade 2006). Therefore, it was reasonable for Commerce to select a country which produces comparable, rather than identical, merchandise when the chosen country had the best information for valuing factors of product.

Second, Plaintiffs' argument that it was unreasonable for Commerce to find that Morocco was a significant producer of *comparable* merchandise is also unpersuasive. As Commerce explained in its IDM, Commerce has "long-standing practice of treating varying low-value added steel products as comparable." *IDM*, P.R. 206 at 11. Specifically, Commerce pointed to "Policy Bulletin 04.1, which states that 'if circular steel pipe and tube', such as WSSP, 'were the subject merchandise', as in our proceeding, then 'rectangular steel pipe and tube, hot-rolled steel sheet and plate, *steel wire rod* {emphasis added}, steel wire rope, *steel bar* {emphasis added}, and structural … would constitute comparable merchandise.'" *Id.* (citing to Policy Bulletin 04.1). As Defendant United States explains in its response brief, plaintiffs cite to no authority or record

evidence supporting its assertions that Moroccan low-value steel products were not comparable to the subject merchandise under review. *See Def. Br.* at 16-18.

Therefore, in this case, it was reasonable for Commerce to select Morocco, a demonstrated producer of comparable merchandise, over Indonesia, a producer of identical merchandise, because the information on the record supports that Morocco was the country with the best surrogate data to value the factors of production.

### C. Substantial Evidence Supports Commerce's Selection of the Surrogate Country with the Best Available Surrogate Information

Finally, Plaintiffs argue that Commerce's determination that the Moroccan information provided the best surrogate value information is unsupported by substantial evidence. *Pl.'s Br.* 9-14. at This argument is without merit. As discussed above, a "court's duty is 'not to evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information.'" *Downhole Pipe & Equipment, L.P. v. U.S.*, 776 F.3d 1369, 1379 (Fed. Cir. 2015). In that case, the Federal Circuit found that "Commerce's well-reasoned explanation of its selection process" supported its conclusion regarding the best available information on the record. *Id.* Here, too, Commerce has provided a well-reasoned explanation for why its choice of surrogate value was reasonable, including having already addressed respondents' (now Plaintiffs') arguments on the record in the IDM.

> 1. <u>Commerce reasonably found that Moroccan data provided the best information to the value factors of production</u>

Plaintiffs argue that it was unreasonable for Commerce to find that the Moroccan data was the best available to value the factors of production because, they contend, the "Moroccan HTS categories are not more specific than Indonesia." *Pl.'s Br.* at 10. However, Commerce convincingly addressed this argument in its IDM, as the Defendant United States discusses in its

brief. *Def.'s Br.* at 20, citing to *IDM*, P.R. 206 at 11-13. Commerce therefore provided a "well-reasoned explanation of its selection process," which, as the Federal Circuit has held, supports finding that "a reasonable mind could conclude that Commerce chose the best available information." *Downhole Pipe & Equipment*, 776 F.3d at 1379.

        2.  <u>Commerce reasonably found that the Moroccan surrogate financial statements provided the best information to value financial ratios</u>

Plaintiffs also argue that it was unreasonable for Commerce to rely on surrogate financial statements from Moroccan producers when there was the financial statement of an Indonesian producer of identical merchandise on the record. *Pl.'s Br.* at 11. As discussed previously, the statute directs Commerce to base surrogate values on "significant producers of *comparable* merchandise." 19 U.S.C. § 1677b(c)(4). Additionally, the Federal Circuit has recognized that "{t}he 'best available information' concerning the valuation of a particular factor of production may constitute information from the surrogate country that is directly analogous to the production experience of the NME producer … or it may not." *Nation Ford Chem. Co.*, 166 F.3d at 1377. Therefore, the fact that the Indonesian company produced identical merchandise, while the Moroccan companies produced comparable merchandise, does not undermine Commerce's finding that the Moroccan surrogate value statements were the best information on the record.

Commerce clearly explained in the IDM why it found that the Indonesian financial statements were not the best information on the record to value surrogate financial ratios. *See IDM*, P.R. 206 at 14-15. In particular, Commerce explained that the financial statements of the Indonesian producer, PT Steel Pipe Industry of Indonesia Tbk ("SPINDO"), reflected that it "was the beneficiary of an Export Working Capital Loan from Indonesia's Export-Import (EXIM) Bank, which was found to be countervailable" in a previous investigation. *Id.* at 14. Commerce's practice is to reject "financial statements where there is evidence that the company

received countervailable export subsidies *and where {it has} other more reliable and representative data on the record.*" *Weishan Hongda Aquatic Food Co., Ltd. v. United States*, 917 F.3d 1353, 1367 (Fed. Cir. 2019) (emphasis original). In *Weishan*, the Federal Circuit identified Commerce's determination that certain financial statements on the record "reveal that each {company} received export subsidies" under a program that Commerce previously found to be countervailable as substantial evidence supporting Commerce's selection of different surrogate value statements not tainted by countervailable export subsidies. *Id.* at 1366. Commerce's decision that that "because SPINDO's financial statements reflect the receipt of countervailable subsidies, they cannot be used to derive surrogate financial ratios here" was therefore reasonable and supported by substantial evidence. *IDM*, P.R. 206 at 14.

Commerce also addressed in its IDM its reasons for finding unpersuasive respondents' arguments against using financial statements of the two Moroccan producers of comparable merchandise for the calculation of surrogate financial ratios. *See IDM*, P.R. 206 at 15-17. Specifically, Commerce distinguished the argument that the Moroccan producers *might* have received countervailable subsidies, from the clear evidence that the Indonesian company on the record "was the beneficiary of subsidies that Commerce has *explicitly* found to be countervailable in *Shrimp from Indonesia*." *Id.* at 16. Commerce also explained that this decision is consistent with its previous findings that "there is a clear hierarchy that prefers surrogate financial statements with 'general' allusions to government subsidization, however numerous, over surrogate financial statements that show clear benefits, however small, from subsidy programs that we have expressly found to be countervailable in other proceedings." *Id.* at 17 (citing to *Aluminum Extrusions from the People's Republic of China: Final Affirmative*

9

*Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 80,506 (Dep't Commerce Oct. 3, 2024) and accompanying IDM at Comment 6).

The fact that the Moroccan surrogate financial statements might contain some "demerits" does not invalidate Commerce's finding that these constituted the best information in comparison to the significantly more flawed Indonesian surrogate financial statements. *Id.* at 16-17. Commerce's surrogate value information "must be the 'best available information,' but there is no requirement that the data be perfect." *Home Meridian Int'l, Inc.*, 772 F.3d at 1296. The Federal Circuit has held that "{w}here Commerce is confronted with two alternatives (both of which have their good and bad qualities), and Commerce has a preferred alternative, the court will not second-guess Commerce's choice." *Mittal Steel Galati S.A.*, 502 F. Supp. 2d at 1313. Indeed, the Federal Circuit came to this conclusion in a case where, as here, "Commerce had a choice between two imperfect financial statements." *Id.* at 1312. Commerce clearly explained in its IDM why, in this case, the Moroccan financial statements were "preferable to their Indonesian counterparts" and therefore the best information on the record. *IDM*, P.R. 206 at 17. As such, this Court should find that Commerce reasonably selected Morocco as the primary surrogate country and relied on Moroccan surrogate values and surrogate financial ratios to value the production of NME subject merchandise.

**III.    Commerce's Application of Total Adverse Facts Available to Vinlong is Supported by Substantial Evidence and in Accordance with Law**

**A.  Commerce Was Statutorily Compelled to Use Facts Available**

Commerce issues questionnaires to elicit sales and cost information necessary to conduct a dumping analysis, and a respondent bears the burden of responding with both all the requested information and creating an adequate record. *ABB Inc. v. United States*, 355 F. Supp. 3d 1206, 1222 (Ct. Int'l Trade 2018) (citing *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337

10

(Fed. Cir. 2016); *QVD Food Corp. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).

Ideally, Commerce makes its determination using the respondent's sales and cost data. However,

the statute provides that Commerce "shall" use facts otherwise available when any one of the

following circumstances apply:

- "Necessary information is not available on the record"; *or*
- "Any interested party… withholds information that has been requested by the administering authority"; *or*
- "Any interested party… fails to provide such information by the deadlines for submission of the information or in the form and manner requested"; *or*
- "Any interested party… significantly impedes a proceeding under this subtitle"; *or*
- "Any interested party… provides such information but the information cannot be verified…"

19 U.S.C. § 1677e(a)(1) and (a)(2)(A)–(D). Facts available is thus "an essential investigative tool

in antidumping and countervailing duty proceedings" as it provides "the only incentive to foreign

exporters and producers to respond to Commerce's questionnaires." *Statement of Administrative

Action (SAA)*, H.R. Doc. No. 103-316, 103d Cong., 2d Session, vol. 1 (1994) at 868.

At least three of the five independently sufficient criteria listed above are implicated in

the instant litigation, as Commerce explained in its final decision. *IDM*, P.R. 206 at 5.

First, necessary information was unavailable on the record. As Commerce explained,

Vinlong was unable to provide necessary data relating to its factors of production and its

proposed alternative "scrap method" was not only "dependent on a narrow subset of Vinlong's

production data" but also "based on Vinlong's own inaccurate books and records." *See IDM*,

P.R. 206 at 4; *and see* Commerce Memorandum re: *Decision Memorandum for the Preliminary

Results of Antidumping Duty Administrative Review: Welded Stainless Steel Pressure Pipe from

the Socialist Republic of Vietnam; 2022-2023* (Aug. 6, 2024) ("PDM"), P.R. 175 at 6; *and see

Def.'s Br.* at 26-27.

11

Second, Vinlong failed to provide information "in the form and manner requested" by Commerce. Commerce requested "per-unit factor amounts based on the actual inputs used by {Vinlong}… during the POR as recorded in… {Vinlong's} normal accounting system" or, in the alternative, "a detailed explanation of all efforts undertaken to report the actual quantity… and explanation of {estimates}." *See* Vinlong, *Section D Response* (Jan. 22, 2024) ("Vinlong Section D QR"), P.R. 59 at D-2 (Commerce's instructions). Vinlong's response did not rely on "actual inputs" despite so claiming. *Def.'s Br.* at 4. Commerce subsequently issued a supplemental questionnaire, and Vinlong responded by stating that it had "deficiencies in the control of accounting books" and a "lack of control" over its accounting books, and by proposing its own alternative. Vinlong, *Submit Response to D Supplemental Questionnaire* (May 23, 2024), P.R. 92 ("Vinlong Sec. D Supp. QR") at SD-Page 3 and SD-Page 9. Commerce explained in both its preliminary and final decisions that the proposed alternative suffered from multiple deficiencies. *IDM*, P.R. 206 at 4; *PDM*, P.R. 175 at 6. Thus, Vinlong failed to provide information "in the form and manner" requested by Commerce.

Third, Vinlong provided information that could not be verified. Vinlong asserts its data were audited. *See* Vinlong Section D QR, P.R. 59 at D-4-D-5; *and see Pl.'s Br.* at 17. As Defendant has explained however, Vinlong was unable to support this assertion with any evidence on the record, or otherwise demonstrate the relevance of unspecified audits by unspecified authorities to Commerce's NME methodology. *Def.'s Br.* at 28. The "burden of creating an adequate record lies with interested parties and not with Commerce." *BMW of N. America LLC v. United States*, 926 F.3d 1291, 1295 (Fed. Cir. 2019) (quoting *Nan Ya Plastics Corp. v. U.S.*, 810 F.3d 1333, 1337 (Fed. Cir. 2016) (quoting *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011))). Vinlong never met this burden.

12

For at least each of these three reasons, Commerce was compelled by statute, at minimum, to use facts available to address Vinlong's failure to provide appropriate factor of production data.

**B. Commerce Operated Within its Statutory Discretion in Applying an Adverse Inference to Vinlong After Repeated Attempts to Obtain Usable Data to No Avail**

Commerce has discretion to draw adverse inferences when selecting from among the facts otherwise available when it finds that a respondent "has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b)(1). A respondent fails to act to the best of its ability when it does not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). As the Federal Circuit has explained,

> Compliance with the "best of its ability" standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation. While the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping.

*Id.* This standard "does not condone inattentiveness, carelessness, or inadequate record keeping." *Id.* The respondent's motivation or intent is not a relevant consideration. *See id.* at 1383 ("While intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate, the statute does not contain an intent element"); *and see Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012). The purpose of this tool is to ensure that an interested party "does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Statement of Administrative Action (SAA)*, H.R. Doc. No. 103-316, 103d Cong., 2d Session, vol. 1 (1994) at 870.

Vinlong failed to operate to the "best of its ability" when it failed to keep adequate records, provided inaccurate information on the record, and failed to remedy the deficiencies in the data provided after being given notice and an opportunity to cure. As Commerce explained in its decision, "Vinlong has repeatedly conceded, as part of its responses to several of our section D supplemental questionnaires, that there are 'deficiencies in the control of {their} accounting books… {that} lead to inaccuracies in the records of steel materials issued into production,' which they cannot 'rectify… for the POR,' because these deficiencies 'originated from the previous Chief Account, who is no longer working at Vinlong.'" *IDM*, P.R. 206 at 4 (citing to *Vinlong Sec. D Supp. QR*, P.R. 92; Vinlong, *Submit Response to D Supplemental Questionnaire* (June 7, 2024), P.R. 107; and Vinlong, *Submit Response to D Supplemental Questionnaire* (June 11, 2024), P.R. 109). These deficiencies were pervasive, impacting not just a single metric but Vinlong's data across the board. As Defendant explained, Vinlong received notice and an opportunity to cure these several deficiencies and resulting inaccuracies, including inaccuracies relating to Vinlong's use of hydrogen, argon, nitrogen and water. *Def.'s Br.* at 28. The extent of these inaccuracies, taken in conjunction with Vinlong's own repeated statements that it lacked control of its internal records and that it lacked the ability to provide accurate data led Commerce reasonably to conclude that Vinlong "failed to cooperate to the best of its ability in this administrative review by maintaining inadequate records." *IDM*, P.R. 206 at 5. Accordingly, Commerce was within its statutory authority to employ total adverse facts available. Commerce provided lawful, well-reasoned explanations in its decision for the use of total adverse facts available, and its decision was supported by substantial evidence.

Plaintiffs contend that Commerce "failed to evaluate Vinlong's conduct in the context of its abilities and efforts," citing as support *Hitachi Energy USA Inc. v. United States*. *Pl.'s Br.* at

14

23. In *Hitachi Energy*, the CAFC found that the CIT incorrectly sustained a Commerce determination that applied an adverse inference to an interested party that had never been given notice and an opportunity to cure the defect upon which Commerce relied to draw an adverse inference. *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1385-86 (Fed. Cir. 2022). Those facts are a stark contrast with the facts of this matter. Here, Vinlong was asked to provide information in an initial questionnaire, responded with deficient information, was alerted to these deficiencies with a supplemental questionnaire, and in its reply, reiterated that its records were inadequate in various ways. *Hitachi* emphasizes consideration of "abilities" in the sense that the interested party must have the "ability" to respond based on notice and an opportunity to be heard, not that the interested party is relieved of the obligation to maintain adequate records that the "best of its ability" standard requires.

Plaintiffs further contend that Commerce failed to state an independent basis on which to ground its use of adverse facts available. *Pl.'s Br.* at 23-24. As Defendant explained, this argument is incorrect. *Def.'s Br.* at 30. Commerce based its decision to apply facts available on Vinlong being "unable to provide correct consumption rates for its material inputs." *PDM*, P.R. 175 at 5. In contrast, Commerce based its decision to apply an adverse inference to Vinlong based on "Vinlong's inability to report its actual consumption rate for use in the FOP database *as well as* its inability to report a reliable and verifiable alternative reporting method {*sic*} its FOP database that can be accurately traced back to its books and records." *Id.* at 6.

Vinlong's failure to maintain adequate records cannot be allowed to serve as a path for the company to obtain a better outcome than it might have in the course of an antidumping proceeding. Commerce's determination to use the adverse inference for which it is afforded authority under 19 U.S.C. § 1677e(b)(1) should accordingly be upheld.

## **CONCLUSION**

For the foregoing reasons, Defendant-Intervenors respectfully requests that the Court deny Plaintiffs' motion for judgment on the agency record and uphold Commerce's final results in the underlying review.

Respectfully submitted,

/s/ Christopher T. Cloutier____
Roger B. Schagrin
Christopher T. Cloutier
Amanda G. Swenson
Alessandra A. Palazzolo
SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Felker Brothers Corporation*
*and Primus Pipe & Tube, Inc.*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief contains 4,324 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in the Standard Chambers Procedures.

/s/ Christopher T. Cloutier\_\_\_\_

Christopher T. Cloutier, Esq.

Dated: May 4, 2025